**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ARMCO EMPLOYEES INDEPENDENT
FEDERATION, INC.,

        Plaintiff,

    v.                             Case No.  1:03cv406

AK STEEL CORPORATION,          District Judge Michael H. Watson

        Defendant.

## OPINION AND ORDER

Before the Court are the following:

1.      The June 29, 2004 Motion of Defendant AK Steel (hereinafter "Defendant" or "AK Steel") for Summary Judgment.  (Doc. 14)  Plaintiff Armco Employees Independent Federation, Inc. (hereinafter "Plaintiff") filed a Memorandum in Opposition on July 23, 2004.  (Doc. 17) Defendant filed a Reply Memorandum on August 6, 2004.  (Doc. 20).

2.      The June 29, 2004 Motion of Plaintiff for Summary Judgment.  (Doc. 15) Defendant filed a Memorandum in Opposition on July 23, 2004.  (Doc. 18) Plaintiff filed a Reply Memorandum on August 6, 2004.  (Doc. 19)

## A.    FACTS

Defendant and Plaintiff are parties to a Collective Bargaining Agreement (hereinafter "CBA") which was in effect at all times material to this litigation.  (Doc. 12 ¶ 1)  Plaintiff is the union representing hourly AK Steel employees.  (Doc. 1 ¶ 4)  The

terms and conditions of Bradley Roberts' (hereinafter "Roberts") employment with Defendant are governed by the CBA. (Doc. 12 ¶ 1)

On July 9, 2002, Defendant terminated Mr. Roberts after testing positive for cocaine metabolites. (Doc. 1 ¶ 8) Subsequently, Mr. Roberts filed a grievance claiming Defendant did not have just cause to discharge him. (Id. ¶ 9) Arbitrator Daniel L. Merritt heard the grievance on September 30, 2002. (Stip. ¶ 2) On December 16, 2002, Arbitrator Merritt issued an opinion and award (hereinafter "Award"), AAA No. 52 300 00464 02. (Id.) The Award, which sustained Mr. Roberts' grievance and ordered his immediate reinstatement, states as follows:

> Based upon the evidence presented, it is the AWARD of this Arbitrator that:
> 1. [Defendant] violated the "just cause and due consideration" provision of the Agreement.
> 2. Grievance No. 02-F-359 is Sustained.
> 3. [Mr. Roberts] shall be reinstated to employment immediately and restored to full seniority and benefits.
> 4. All references to this matter shall be expunged from [Mr. Roberts'] employment records.
> 5. [Mr. Roberts] shall be awarded back pay accrued from 28 June 2002 through the date of reinstatement.
> 6. The calculation of back pay is remanded to the parties. The arbitrator retains jurisdiction of this A[ward] in the event of continuing dispute.

(Doc. 12, Exh. 4, p. 23)

Pursuant to the Award, Defendant reinstated Mr. Roberts to employment as an apprentice rigger on January 14, 2003 at his appropriate pay rate, with full seniority and benefits, and reimbursed him with full back pay. (Doc. 12 ¶ 3) On January 10, 2003, four days prior to Mr. Roberts' reinstatement with Defendant, Dr. John Rutan, the Medical Director for AK Steel Middletown Works, conducted a return-to-work physical examination of Roberts. (Doc. 20, Exh. A; Doc. 17, Exh. 1, ¶ 3) According to Mr.

Roberts, Defendant "ordered [him] to report to the AK Medical Center" (Doc. 17, Exh. 1 ¶ 3), and

> [I]n that meeting, Dr. Rutan Informed [him] that [his] reinstatement would be subject to the following conditions: (1) review by Dr. Rutan of [his] 'rehabilitation' records; (2) random drug and alcohol testing; and (3) temporary work restrictions until the first two conditions were satisfied.

(Doc. 17, Exh. 1 ¶ 4) Dr. Rutan maintains he did not tell Mr. Roberts that his reinstatement was subject to certain conditions. (Doc. 20, Exh. A ¶ 3) Based on the results of that examination, however, Dr. Rutan ordered certain physical restrictions and periodic drug testing. (Id.)

Subsequently, Defendant directed Mr. Roberts to submit to periodic drug tests on February 27, 2003, March 26, 2003, April 28, 2003, June 10, 2003, July 15, 2003, and October 1, 2003. (Doc. 12 ¶ 3) In addition, for a period of two months, AK Steel placed Roberts on temporary work restrictions, which allowed Mr. Roberts to continue his employment as an apprentice rigger at his appropriate pay rate, but which restricted him from climbing on ladders, working at unguarded heights, and operating mobile equipment. (Doc. ¶ 3, Exh. 5)

On June 5, 2003, Plaintiff filed this action under §301 of the Labor Management Relations Act, 29 U.S.C 185, to enforce Arbitrator Merritt's Award.

## B.   ARGUMENTS OF PARTIES

### 1.   Summary Judgment

Defendant argues it fully complied with Arbitrator Merritt's Award by reinstating Mr. Roberts, restoring him to full seniority and benefits, and reimbursing him with full back pay. Further, by fully complying with the Award, and eliminating the need for

judicial enforcement of the Award, Defendant maintains there is no legal basis for an enforcement action and Plaintiff's Complaint should be dismissed.

Defendant contends whether it had the right to direct Mr. Roberts to submit to drug testing in accordance with counseling requirements and to temporarily restrict his work assignments as an apprentice rigger is not for this Court to decide. Maintaining that it fully complied with Mr. Roberts's reinstatement, Defendant argues any question as to the validity of Mr. Roberts's temporary reassignment and the periodic drug testing should be handled as a separate grievance and fall under the grievance procedures of the CBA, set forth in Article VII, which provides the CBA "shall constitute the sole recourse with respect to any clam by an employee of a violation of [the CBA] by the Company." Arguing that Plaintiff's claim should be barred as it did not exhaust the exclusive grievance and arbitration procedures set forth in the CBA, Defendant cites *Clayton v. International Union*, 451 U.S. 679, 681 (1981):

> [an] employee seeking a remedy for an alleged breach of the collective-bargaining agreement between his union and employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement before he may maintain a suit against his union or employer under section 301(a) of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U.S.C. section 185(a).

In addition, Defendant argues it has the authority to make temporary assignment changes and to order periodic drug testing. Moreover, Defendant maintains it has the same management and contractual rights with respect to a reinstated employee as it does with respect to any other hourly employee. Defendant contends Article V(A)(1) of the CBA provides it with the exclusive right to direct its working forces, including the right to change assignments and to be the judge of the physical fitness of

employees.[1] Also, Defendant maintains, that as a result of Dr. Rutan's return-to-work physical, it had the authority under the CBA to direct employees to submit to drug testing in accordance with counseling requirements.[2]

Defendant argues further that Arbitrator Merritt could not and did not attempt to change or alter these contractual provisions which expressly allow Defendant to make assignment changes and to drug test reinstated employees. Defendant asserts that, under Article VII(F)(2) of the CBA, such an alteration of these contractual rights could not properly have been a part of the award's reinstatement order:

> The arbitrator shall have jurisdiction and authority to interpret and apply the provisions of this Agreement only insofar as necessary to the determination of such grievance, but he shall not have jurisdiction or authority in any way to change the provisions of this Agreement by alterations, additions to, or subtractions from the terms thereof.

(Doc. 12 Exh. 1, pp. 36-37)

---

[1] Article V(A)(1) of the CBA between Plaintiff and Defendant provides that, "[t]he management of the business and the direction of its working forces, including the right to hire, retire, change assignments, promote, demote, suspend, discharge . . . and to be the judge of the physical fitness of employees are the exclusive rights of the Company; provided however that in the exercise of such rights the Company shall observe the provisions of this Agreement. (Doc. 12. Exh. 1, p. 18)

[2] The Alcohol and Substance Abuse Policy provides that the following instances will result in testing for presence of alcohol, illicit or abused substances:

    (1)    All New Hires as part of the pre-employment physical and as a condition of employment will be given a urine screen.

    (2)    All returns from Military Leave, Lay-Off, Sick Leave involving drug or alcohol treatment, or Leaves of Absence.

    (3)    All on-the-job injuries or accidents where there is reasonable suspicion to believe drug or alcohol use may be involved.

    (4)    Suspected instances of employees being under-the-influence of drugs or alcohol as suspected by members of Supervision, Management or Security personnel.

    (5)    In **accordance** with **counseling** or disciplinary **requirements.**

(Doc. 12 . Exh. 1, p. 181) (Emphasis Added)

In response, Plaintiff argues Arbitrator Merritt's Award was "unconditional," and that by subjecting Mr. Roberts to temporary work restrictions and periodic drug testing, Defendant failed and refused to fully comply with the Award. Plaintiff rebuffs Defendant's defense that the terms and conditions of employment imposed upon Mr. Roberts were not incident to, or a condition of, his reinstatement, but rather, constituted a discrete, subsequent exercise of legitimate management prerogative under the CBA. Plaintiff supports its position with Mr. Roberts's affidavit, which states Dr. Rutan told him the terms and conditions were a condition of reinstatement. In addition, Plaintiff points out that Defendant failed to inform the Court of the events, separate from those already considered and addressed by Arbitrator Merritt, which gave rise to its alleged authority to impose conditions upon Mr. Roberts's reinstatement.

Moreover, Plaintiff cites the failure of past attempts by Defendant to impose terms and conditions of employment upon an otherwise unconditionally reinstated worker, and urges the Court to act in accordance to those prior decisions which invalidated the terms and conditions imposed by AK Steel. *See AK Steel Corporation v. Armco Employees Independent Federation, Inc.*, C-1-99-052 (Weber, J.); *AK Steel Corporation v. Armco Employees Independent Federation, Inc.*, C-1-99-053 (Dlott, J.).

Also, it is Plaintiff's position that Defendant must be deemed to have waived any right to claim the authority to impose any terms and conditions of employment incident to Mr. Roberts's reinstatement, as it did not, at any time, raise any remedial issues as to the terms and conditions imposed on Mr. Roberts's reinstatement.

### 2. Attorney Fees

Both parties seek attorney fees. Defendant argues Plaintiff ignored the required contractual grievance procedure and filed this present, improper lawsuit; whereas Defendant fully complied with Arbitrator Merritt's Award. Defendant contends that by filing this lawsuit, and burdening the Court, Plaintiff breached the CBA and necessitated this litigation.

In contrast, Plaintiff argues that Defendant acted in bad faith with respect to (1) causing this action to be brought and (2) committing the acts giving rise to Plaintiff's substantive claim. Specifically, Plaintiff contends that, without basis, Defendant failed and refused to comply with the clear and unequivocal, final and binding Award. In addition, in recent years, Defendant was twice ordered to comply with final and binding arbitration awards ordering the unconditional reinstatement of workers discharged for alleged violation of Defendant's Alcohol and Substance Abuse Policy, and two more enforcement actions are currently pending before the Court. Thus, it is Plaintiff's position that Defendant acted in bad faith.

### C. ANALYSIS

### 1. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case.

1:03cv406                                                                                  7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### 2. Enforcement of Arbitrator's Award

The premise of Defendant's argument is that it fully complied with Arbitrator Merritt's Award by reinstating Mr. Roberts, restoring him to full seniority and benefits, and reimbursing him with full back pay. As discussed in greater detail below, this premise is incorrect. Defendant did not reinstate Mr. Roberts. By subjecting Roberts to a return-to-work physical examination, which resulted in the imposition of work restrictions and periodic drug testing, Defendant violated Arbitrator Merritt's unconditional order of reinstatement.

There is a strong federal policy in favor of enforcing arbitration agreements. In fact, a court must enforce an arbitrator's award as long as it "draws its essence from the collective bargaining agreement," and is not merely "his [or her] own brand of industrial justice." *Tennessee Valley Auth. v. Tennessee Valley Trades and Labor Council*, 184 F.3d 510, 515 (6th Cir. 1999). In this case, the parties do not dispute that Arbitrator Merritt's Award drew its essence from the CBA and do not allege that Arbitrator Merritt

implemented his own brand of industrial justice. As such, the focus of the analysis is whether Defendant fully complied with the Award.

As stated previously, the Award ordered Mr. Roberts "reinstated to employment immediately and restored to full seniority and benefits." (Doc. 12, Exh. 4, p. 23) The term reinstatement means "actually putting an employee back on active payroll, returning the employee to a specific job, and allowing the employee to perform his work responsibilities." *Chicago Newspaper Guild v. Field Enter., Inc.*, 747 F.2d 1153 (7th Cir. 1984). Moreover, Black's Law Dictionary defines "reinstate" as: "To reinstall; to reestablish; to place again in a former state, condition, or office; to restore to a state or position from which the object or person had been removed." Black's Law Dictionary 1287 (6th ed. 1990). As such, applying the clear meaning of reinstatement, Arbitrator Merritt's Award mandates Mr. Roberts be placed in the position in which he would have been had the discharge never taken place.

Additionally, guidance is found in *AK Steel v. Armco Employees Independent Federation, Inc.*, C-1-99-052 (2001) (hereinafter "*AK Steel I*") and *USWA v. Dayton-Walther Corp., Muncie Division*, 657 F. Supp. 50, 56 (S.D. Ind. 1987). In *AK Steel I*, which involves the same two parties, AK Steel filed a complaint seeking to vacate the arbitrator's award which ordered the unconditional reinstatement of a formerly discharged employee to his prior position. *Id.* at 7. AK Steel reinstated the employee contingent on terms and conditions, including, *inter alia*, submission to random urinalysis and restrictive bidding rights, contrary to the unconditional reinstatement ordered by the arbitrator. *Id.* at 18. AK Steel claimed that the Arbitrator's decision

denied it the right to determine "fitness for duty" as it would for any other employee in order to provide a safe work environment for all of its employees. *Id.* Judge Weber held AK Steel could not impose conditions on an arbitrator's order of unconditional reinstatement:

> [w]hile Article V(A)(1) provides that [AK Steel] is to be the exclusive judge of the physical fitness of its employees, nowhere in the internal documents cited to the Court are there any contractual provisions giving [AK Steel] full authority to impose any conditions it deems necessary after an order of unconditional reinstatement by an arbitrator.

*Id.* As such, Judge Weber held that the arbitrator's award should be fully enforced.

Additionally, in *Dayton-Walther*, an arbitrator's award reinstated an employed to an electrician position. However, the employer neither reinstated the employee on the active payroll, returned him to his job nor allowed him to perform his work responsibilities. Instead, the employer conditioned the employee's reinstatement upon a successful completion of a return-to-work physical examination, notwithstanding the fact the arbitration award did not contain such a prerequisite. The *Dayton-Walther* court concluded, "by failing to return [the employee] to work as an electrician following the arbitration award ordering reinstatement, the [employer] failed to comply with the plain mandate of the arbitration award." *Id.* at 56.

Currently, Defendant failed to comply with the Award as it did not unconditionally reinstate Roberts to his position as apprentice rigger. Instead, Defendant subjected Mr. Roberts to a physical, which resulted in the imposition of periodic drug testing and temporary work restrictions. Defendant's argument that it reinstated Mr. Roberts and then imposed these conditions is specious in light of the facts. Mr. Roberts' physical occurred four days before he resumed employment. As such, at the time of the

1:03cv406                                                                                          10

physical, Defendant had not returned Mr. Roberts to his specific job and allowed him to perform his work responsibilities. Thus, he had not been reinstated to the position from which he had been discharged, as clearly required of the Award, at the time the condition of the physical was imposed upon Mr. Roberts.

Accordingly, the Court concludes the imposition of the return-to-work physical examination violated the Award's unconditional order of reinstatement.

### 3.  Attorney Fees

Both parties seek attorney's fees. Upon review, the Court declines to award either party attorney's fees.

The Sixth Circuit has indicated that awarding attorney fees is in the discretion of the court. *Nashville Newspaper Printing Pressman's Union Local v. Newspaper Printing Corp.*, 518 F.2d 351, 352 (6th Cir. 1975). Attorney fees are recoverable in Section 301 actions if a party has acted in bad faith. *Aircraft Braking Sys. Corp. V. Local 586, UAW*, 97 F.3d 155, 163 (6th. Cir. 1984).

It is the Court's conclusion neither Plaintiff nor Defendant acted in bad faith. Plaintiff rightfully brought this lawsuit to enforce Arbitrator Merritt's Award. Further, Defendant's argument was not previously asserted and was grounded in the CBA. As such, Defendant's actions do not amount to bad faith.

1:03cv406

**C.    Conclusion**

Accordingly, the June 29, 2004 Motion of Defendant for Summary Judgment (Doc. 14) is hereby **DENIED** and the June 29, 2004 Motion of Plaintiff for Summary Judgment (Doc. 15) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**